Approved: __Derek Wikstrom__ *Signed by Cais Chafen with permission*
DEREK WIKSTROM
Assistant United States Attorney

Before: THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA           :    SEALED COMPLAINT  21 MJ 10437
                                   :
                                   :    Violation of 18 U.S.C.
    - v. -                         :    §§ 922(g)(1) & 2
                                   :
GELANI DIXON,                      :
    a/k/a "T,"                     :    COUNTY OF OFFENSE:
                                   :    ORANGE
           Defendant.              :
                                   :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ROBERT SOUKERAS, being duly sworn, deposes and says that he is a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and charges as follows:

### COUNT ONE

1. From in or about September 2020, up to and including on or about September 20, 2021, in the Southern District of New York, GELANI DIXON, a/k/a "T," the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, an Arcadia Machine & Tool (AMT) Model Back-Up .45 caliber pistol bearing serial number DLX00174, and the firearm was in and affecting interstate commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with the ATF. I have been personally involved in the investigation of this matter. This

affidavit is based upon my personal participation in the investigation of this matter, as well as on my conversations with other law enforcement officers and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my discussions with other law enforcement officers and my review of related reports, I know that on or about September 20, 2021, a woman ("Witness-1") carried a pistol (the "Firearm") into the stationhouse of the Port Jervis City Police Department ("PJPD") and surrendered the Firearm to law enforcement.

4. I have examined photographs of the Firearm, and I have spoken with other law enforcement officers who have examined the Firearm, and based on that examination and those discussions, I know that the Firearm is an Arcadia Machine & Tool (AMT) Model Back-Up .45 caliber pistol bearing serial number DLX00174.

5. I have interviewed Witness-1. I have also spoken with other law enforcement officers who interviewed Witness-1, and have reviewed law enforcement reports relating to those interviews. Based on the interviews with Witness-1 conducted by law enforcement, I have learned, among other things, the following:

a. Witness-1 has known GELANI DIXON, a/k/a "T," the defendant, for two to three years. Witness-1 knows DIXON as "T."

b. DIXON has in the past supplied Witness-1 with crack cocaine and marijuana.

c. Sometime within approximately the last year, DIXON was at Witness-1's house; while there, DIXON showed Witness-1 the Firearm, and offered to sell the Firearm to Witness-1. Witness-1 declined to purchase the Firearm.

d. Unbeknownst to Witness-1, DIXON thereafter hid the firearm at Witness-1's house.

2

e. On or about September 20, 2021, DIXON came to Witness-1's house and asked to come in. When Witness-1 refused to let DIXON in, DIXON told Witness-1, in substance and in part, that he had hidden an item in a cinderblock underneath the stairs in Witness-1's basement, and told Witness-1 to retrieve it. Witness-1 complied with that instruction, and found an item wrapped in a cloth rag. When Witness-1 pulled the item out, it fell onto the ground, at which point Witness-1 recognized it as a gun. Witness-1 picked up the gun with a plastic bag and brought it back upstairs to DIXON.

f. DIXON then told Witness-1 to carry the gun for him, explaining to Witness-1 that DIXON did not want to be caught with the gun—DIXON had gotten into an argument with a third person on the street, and was concerned that third party had called the police. Witness-1 felt that she could not refuse this instruction from DIXON, and so the two began walking down a street in Port Jervis, New York, with Witness-1 holding the gun, at DIXON's direction, in the plastic bag.

g. DIXON was walking ahead of Witness-1, and Witness-1 attempted to get away from DIXON by hiding behind a bush. Witness-1 then saw a woman ("Witness-2") driving a car, pulling out of a nearby driveway. Witness-2 asked Witness-1 if she needed help, and allowed Witness-1 to get into her car. Witness-2 then drove Witness-1 to the PJPD stationhouse.

h. When Witness-1 arrived at the PJPD, she turned in the gun to PJPD officers.

6. On or about September 20, 2021, Witness-2 was interviewed by law enforcement. Based on my review of law enforcement reports about that interview and my discussions with PJPD officers, I have learned, among other things, the following:

a. On or about September 20, 2021, Witness-2 saw a tall Black man with small braids and a hat walking past her house. Witness-2 saw this man turn around down the street and say "let's go" as he snapped his fingers, to a woman who was walking behind him, and who was subsequently identified as Witness-1.

b. Witness-2 then got into her car and began to pull out of her driveway, at which point she saw Witness-1 again, hiding behind some bushes.

3

    c.  Witness-1 asked Witness-2 for help, and Witness-2 told Witness-1 to get into Witness-2's car.

    d.  Once inside the car, Witness-1 told Witness-2 not to be scared, but that Witness-1 had a gun in her pocket that the man she was walking behind made her carry. Witness-2 then said "we're going to the police station," and drove Witness-1 to the police station.

    e.  Witness-2 stated that she believed the tall Black man with small braids was wearing a light blue shirt and a light blue hat, but that she was not completely sure.

    7.  On or about September 23, 2021, I met with Witness-2, and showed her an array of six photographs—one of which depicted GELANI DIXON, a/k/a "T," the defendant—and asked whether Witness-2 could identify the man she saw walking on the street with Witness-1 on or about September 20, 2021. Witness-2 was unable to confirm whether any of the six photographs depicted the man she saw on or about September 20, 2021. Witness-2 described the man as having been a tall Black male wearing a teal shirt, black "joggers" (i.e., sweatpants with cuffs), and a backwards cap, with braided hair that was visible hanging out of both sides of the cap near his ears.

    8.  Based on my discussions with a detective ("Detective-1") with the PJPD, and my review of related law enforcement reports, I have learned, among other things, the following:

    a.  When, on or about September 20, 2021, Witness-1 and Witness-2 walked into the PJPD stationhouse to surrender the Firearm, Detective-1 met with Witness-1 and debriefed her.

    b.  While Detective-1 was speaking with Witness-1, Witness-1 received a call from GELANI DIXON, a/k/a "T," the defendant. During that call, which Detective-1 overheard, Detective-1 heard DIXON tell Witness-1, in substance and in part, that he needed the gun back, and repeatedly asked Witness-1 where she was.

    c.  After that call, Detective-1 outfitted Witness-1 with an audiovisual recording device, hidden in a pair of sunglasses. Shortly after the device began recording, Witness-1 received another phone call from GELANI DIXON, a/k/a

4

"T," the defendant. That call, and a subsequent meeting between DIXON and Witness-1, were captured by the recording device.

9.  Based on my review of the recording, and my discussions with Detective-1 and Witness-1, I know that approximately one minute into the recording, GELANI DIXON, a/k/a "T," the defendant, called Witness-1's cellphone and they had a brief conversation, in which DIXON asked Witness-1 where she was and sought to arrange to meet her. They agreed to meet near a pizza restaurant in Port Jervis, New York. Approximately seven minutes into the recording, Witness-1 met DIXON on a street in Port Jervis. During their ensuing conversation, Witness-1 told DIXON, in substance and in part, "don't ever put me in that position again…I got scared…I cannot carry your thing on me." DIXON responded, in substance and in part, that he knew Witness-1 was scared, but "I was taking you right there to get rid of that." During much of the recording, the recording device appeared to be on top of Witness-1's head, and as a result, DIXON and the surrounding area were not visible. However, at one point during the video, DIXON is clearly visible, and I recognized him as GELANI DIXON, a/k/a "T," the defendant, based on my review of DIXON's photograph in a criminal history database regularly used by law enforcement.

10. Based on my review of Port Jervis street surveillance camera footage taken while Witness-1 was using the recording device, and my discussions with Detective-1, who has spoken with other PJPD officers who conducted surveillance of Witness-1 and DIXON's meeting on or about September 20, 2021, I know that during the recorded conversation discussed above, Witness-1 and GELANI DIXON, a/k/a "T," the defendant, were walking together on the streets in Port Jervis, New York. DIXON was wearing black cuffed sweatpants, a dark shirt, and a backwards hat with a multi-colored print, and had short braids sticking out of both sides of the hat near his ears.

11. Based on my review of a criminal history report for GELANI DIXON, the defendant, I have learned, among other things, that on or about April 7, 2015, DIXON was convicted in Orange County Court of attempted criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law Section 220.16(1), and on or about May 5, 2015, was sentenced to 18 months' imprisonment.

12. As part of my investigation, I have been informed by an ATF Special Agent who has expertise concerning the manufacturing of firearms and who reviewed photographs of the

Firearm, that the Firearm was manufactured in the State of California.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of GELANI DIXON, the defendant, and that he be imprisoned or bailed, as the case may be.

_____
Robert Soukeras
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this
1st day of November, 2021

_____
THE HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK